**IN THE UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO
SENIOR JUDGE MARCIA S. KRIEGER**

Civil Action No. 18-cv-02213-MSK-GPG

**STACIE CULP, and
STEPHANIE PETERS,**

    Plaintiffs,

v.

**REMINGTON OF MONTROSE, LLC, and
REMINGTON OF MONTROSE GOLF CLUB, LLC,**

    Defendants.

---

**OPINION AND ORDER SUSTAINING IN PART AND OVERRULING IN PART
OBJECTIONS**

---

**THIS MATTER** comes before the Court pursuant to the Plaintiffs' Objections **(# 39)** to the Magistrate Judge's oral order **(# 35)** resolving a discovery dispute **(# 32)** between the parties, the Defendants' response **(# 40)**, and the Plaintiffs' reply **(# 41)**.

**FACTS**

The Plaintiffs, employees of the Defendants ("Remington"), allege that they experienced sexual harassment from various co-workers and supervisors, and that Remington management failed to take appropriate remedial action in response to their complaints. The instant dispute relates to an investigation that Remington officials with regard to allegations that Jason DeSalvo, a Remington supervisor, had sexually harassed both plaintiffs between 2016 and 2017. It is undisputed that Remington officials conducted that investigation, in part, upon conferral with and at the direction of Tammy Eret, Remington's counsel in this case. At the conclusion of that

investigation, Remington issued a written warning to Mr. DeSalvo, demoted him, and suspended him for 5 days.

In Remington's Answer **(# 7)**, Remington asserts an affirmative defense invoking "the standard set forth by the United States Supreme Court in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998)." Without delving into the nuances (and indeed, applicability) of these cases, it is sufficient for purposes of this Order to explain that, in certain circumstances, an employer facing a claim of sexual harassment by an employee may avoid liability or damages by establishing that, among other things, "the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior." *Burlington*, 524 U.S. at 764-65. An employer invoking that affirmative defense is generally required, at a minimum, to show that it "launch[ed] a prompt investigation to determine whether the [employee's report of harassment] is justified." *See e.g. Debord v. Mercy Health Sys. of Kansas, Inc.*, 737 F.3d 642, 654 (10th Cir. 2013). And, of course, the reasonableness of the employer's investigation – *i.e.* its thoroughness – and the appropriateness of any disciplinary action that the employer took against the alleged harasser in light of that investigation are also matters that the jury must consider in evaluating a *Faragher/Ellerth* affirmative defense. *Id.*

During the deposition of Rick Crippen, one of the Remington officials who participated in the investigation, Ms. Eret instructed Mr. Cippen not to answer certain questions about the nature and extent of the investigation, invoking the doctrine of attorney-client privilege. Later, Remington also invoked the attorney work product privilege as well. Contending that the invocation of the *Faragher/Ellerth* affirmative defense operated as a waiver of any privilege that attached to an attorney's involvement in an investigation into an employee's sexual harassment

complaint, the Plaintiffs sought a ruling from the Magistrate Judge **(# 32)**. Following a hearing and a review of certain documents *in camera*, the Magistrate Judge directed **(# 35)** that Remington disclose certain additional documents to the Plaintiffs, but found that one document, Docket # 36-2, was "protected by the attorney-client privilege or the work-product doctrine, and [ ] that [it] would [not] assist the Plaintiff[s] with regard to the *Faragher/Ellerth* defense." *Docket #* 38 at 7. The Magistrate Judge also directed that the Plaintiffs would not be permitted to depose Ms. Eret and that depositions of Mr. Crippen and other Remington witnesses could be reopened to allow further questioning about material revealed in the newly-produced documents, but that the Plaintiffs could not inquire "what the interviewers were instructed to ask or any advise or information received from Ms. Eret."

The Plaintiffs filed the instant Objections **(# 39)**, arguing that: (i) invocation of a *Faragher/Ellerth* defense operates, as a matter of law, to waive attorney-client and attorney work product privileges relating to the employer's investigation; and (ii) that such a waiver operates even if Remington were to seek to withdraw its *Faragher/Ellerth* defense.

## ANALYSIS

The Court reviews the Magistrate Judge's determinations of non-dispositive matters such as discovery, reversing only if the Court finds that the ruling was clearly erroneous or contrary to law. Fed. R. Civ. P 72(a). A ruling is "clearly erroneous" if it is without factual support in the record or if, after considering all the evidence, this Court is "left with the definite and firm conviction that a mistake has been committed." *Allen v. Sybase, Inc.*, 468 F.3d 642, 658 (10th Cir. 2006).

The Plaintiffs do not contest the Magistrate Judge's conclusions that the written materials and questions posed at Mr. Crippen's deposition intrude upon areas protected by the attorney-

client and attorney work product privileges, and the Court will assume that those privileges are properly invoked in the circumstances presented here. The only issue raised by the Plaintiffs is whether Remington's assertion of a *Faragher/Ellerth* defense operates to automatically waive that privilege as it relates to the attorney's involvement with the employer's investigation of a report of sexual harassment.

The 10th Circuit has not – and indeed, as best as the Court's research reveals, nor has any Circuit Court of Appeals –categorically stated that assertion of a *Faragher/Ellerth* defense operates to waive privileges that attach to an attorney-guided investigation of a sexual harassment complaint. But the clear weight of District Court authority leans towards such a finding. *See e.g. EEOC v. Outback Steakhouse of FL, Inc.*, 251 F.R.D. 603, 611 (D.Colo. 2008) ("Courts have interpreted an assertion of the *Faragher/Ellerth* affirmative defense as waiving the protection of the work product doctrine and attorney-client privilege in relation to investigations and remedial efforts in response to employee complaints of discrimination because doing so brings the employer's investigations into issue") (collecting cases); *Barbini v. First Niagara Bank, N.A.*, 331 F.R.D. 454, 460 (S.D.N.Y. 2019); *Koumoulis v. Independent Financial Mktg. Group, Inc.*, 29 F.Supp.3d 142, 148 (E.D.N.Y. 2014); *Koss v. Palmer Water Dept.*, 977 F.Supp.2d 28, 29 (D.Ma. 2013). Even in the sporadic cases that have refused to direct production of attorney communications or work product, the courts have been careful to distinguish their particular factual situation as falling outside the general rule. *See e.g. McKenna v. Nestle Purina PetCare Co.*, 2007 WL 433291 (S.D.Oh. Feb. 5, 2007) (slip op.) (finding that the attorneys there "did not personally engage in the investigation, conduct interviews, or make decisions" or "otherwise participate in the investigation itself"); *Waugh v. Pathmark Stores, Inc.*, 191 F.R.D. 427, 431 (D.N.J. 2000) ("Wynn did not conduct interviews and did not render

disciplinary determinations: Wynn did not act as a participant in the investigation or a decisionmaker in the remediation Pathmark effectuated").

Here, Remington argues that it "will not rely on any privileged testimony or documents for its *Faragher/Ellerth* and related defenses[; t]herefore, Remington has not placed any otherwise privileged testimony or documents at issue." This statement is not elaborated upon and its meaning is difficult to assess. Presumably, Remington is arguing that it is prepared to let the investigation, as conducted, speak for itself. In other words, Remington does not intend to offer anything more than the fact that its officials interviewed the witnesses listed on Docket #36, and that those witnesses gave statements reflected in the notes at Docket #36-3, all of which has been produced to the Plaintiffs. But, much as a used car dealer might want the buyer not to look beyond the carefully polished hood and investigate the engine underneath, this argument fails to appreciate that the very reason that Remington might wish to conceal the privileged information is because its disclosure could reveal that Remington's investigation was <u>less</u> thorough that it could or should have been. Assume – entirely hypothetically – that Remington informed Ms. Eret that it believed that there might be other witnesses with relevant information that it had not yet spoken to, and that Ms. Eret advised Remington not to speak to those witnesses as part of the investigation. The existence of un-contacted relevant witnesses would not be revealed by Remington's promise not to disclose privileged information (*i.e.* Remington's question to Ms. Eret and her advice) as part of its defense, but that fact would certainly be relevant to the jury's consideration of whether Remington's investigation was sufficiently thorough. Thus, Remington's promise not to "rely on any privileged testimony" does little to ensure that all relevant information is presented to the jury. The Plaintiffs' entitlement to discovery of Ms.

Eret's advice, on the other hand, serves to ensure that any influence by her that affected the thoroughness of the investigation is brought to light.

Thus, this Court agrees with those cited above that have concluded that an attorney's involvement in the investigation of a sexual harassment complaint operates to waive the attorney-client privilege and attorney work product privilege relating to that investigation if the employer raises a *Faragher/Ellerth* defense.

This is not the end of the dispute, however. The Magistrate Judge found that the withheld material was not "relevant" because it "would [not] assist the Plaintiff with regard to the *Faragher/Ellerth* defense." This presents a different inquiry from the question of attorney-client or attorney work product privilege and the waiver thereof. To evaluate the relevance of the material in question, the Court discusses it herein, albeit at a level of superficiality that attempts to preserve the actual communications between Remington and Ms. Eret.

Docket #36-2 essentially consists of three e-mail exchanges or chains. They can be described as follows:

• A July 25-26, 2017 exchange between Ms. Eret and Eric Feely, Remington's General Manager. Mr. Feely inquires of Ms. Eret regarding two topics, one of which involves the question of which employees should be interviewed by Mr. Feely as part of the investigation. Ms. Eret responds with certain advice. It appears that, ultimately, Remington chose not to follow Ms. Eret's advice, interviewing fewer employees than Ms. Eret advised. Remington's decision to interview fewer employees than Ms. Eret advised is a fact that a reasonable juror could

conclude affects the reasonableness of Remington's investigation. Thus, the Court finds that this exchange is material to Remington's *Faragher/Ellerth* defense and thus, should be produced.[1]

• A July 31- August 1, 2017 exchange between Ms. Eret, Mr. Feely, and Beth Morris-Feely, Remington's Human Resources Manager. In that exchange, Mr. Feely provided Ms. Eret with his notes from the investigation. Ms. Eret suggested certain follow-up questions, but Ms. Morris-Feely responded that Remington did not intend to re-interview any witnesses. Ms. Morris-Feely also indicated a proposed sanction Remington intended to impose on Mr. DiSalvo and sought Ms. Eret's advice on whether that sanction would be lawful. Ms. Eret gave advice on that question. It appears that, ultimately, Remington chose to impose a different sanction than the one it initially discussed with Ms. Eret. Both the issues of whether to follow up on witness interviews and the decision of what sanction to impose on Mr. DiSalvo are matters that bear directly on the reasonableness of Remington's investigation and its *Faragher/Ellerth* defense, and thus, Remington's decision to comply with or disregard the advice of its attorney on those issues are matters that are relevant and discoverable. Remington shall produce pages 9-18 of Docket #36-2.

• An August 3, 2017 exchange between Ms. Eret and Ms. Morris-Feeley. Ms. Morris-Feeley provided Ms. Eret with two additional pages of notes from interviews Mr. Feely had conducted with two witnesses, and Ms. Morris-Feely asked Ms. Eret to comment upon the issues reflected in the notes.[2] Ms. Eret makes some comment on the notes but does not give any

---

[1]  To isolate the pertinent discussion from the second topic that Mr. Feely inquired about, which is unrelated to any investigation, the Court will direct that Remington produce pages 4 and 5 of Docket #36-2, but that Remington may redact the first full substantive paragraph ("Please find a Memo attached...") of Mr. Feely's July 26, 2017 e-mail and need not produce pages 6 and 7 of Docket #36-2.

[2]  These notes are part of the production already given to the Plaintiffs.

additional advice.  In the same communication, she does discuss another issue that she notes is "not what we are here for at this point" – namely, the investigation into the Plaintiffs' allegations.  The Court agrees with Ms. Eret's assessment that that issue does not bear on the reasonableness of Remington's *Faragher/Ellerth* defense.  Thus, the Court agrees with the Magistrate Judge that this exchange is not relevant and need not be produced.

Accordingly, the Court sustains in part and overrules in part the Plaintiffs' Objections.[3]

## **CONCLUSION**

For the foregoing reasons, the Court **SUSTAINS IN PART** and **OVERRULES IN PART** the Plaintiffs' Objections **(# 39)**.  Remington shall produce to the Plaintiffs pages 4-5

---

[3] Remington may have previously expressed a willingness to withdraw its *Faragher/Ellerth* defense if the court were inclined to deem it to have waived its attorney-client or work product privileges relating to the investigation, and the Plaintiffs' Objections address that issue.  But Remington's response to the Objections does not articulate a conditional intention to withdraw the defense, and thus, the Court concludes that it need not reach the question of whether withdrawal of that defense would warrant a different outcome here.

Moreover, the Magistrate Judge directed that Ms. Eret would not be required to sit for a deposition.  The parties have not addressed whether a ruling by this Court finding a waiver of privilege would warrant revisiting the question of whether Ms. Eret should be deposed.  The Court finds that, in most respects, Ms. Eret's advice on certain matters is clearly set forth in the e-mail exchanges the Court has ordered produced, and thus, there is no need for a deposition of Ms. Eret on these points.  There is one instance in which Ms. Eret's advice to Remington on a certain issue appears to have been given orally, rather than in writing.  Specifically, in discussing what form of discipline should be administered to Mr. DiSalvo, Remington proposed one approach, Ms. Eret approved it, Remington then suggested a different approach, and Ms. Eret had some oral discussion with Remington about that second approach.  The Court will not conclude at this time that a deposition of Ms. Eret to ascertain the scope of that oral discussion is warranted.  The Plaintiffs are free to inquire of Mr. Feely and Ms. Morris-Feely about the reasons for Remington's change of heart, and may also be permitted to inquire what discussions Remington officials had with Ms. Eret about the appropriateness of the second disciplinary option.  But the Court does not see, at this time, the necessity of having Ms. Eret give a deposition on that same subject.

(with the aforementioned redaction) and 9-18 of Docket #36-2 within 7 days of this Order. The Court **AFFIRMS** the Magistrate Judge's oral ruling **(# 35)** in all other respects.

Dated this 11th day of May, 2020.

**BY THE COURT:**

*/s/ Marcia S. Krieger*

Marcia S. Krieger
Senior United States District Judge