IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez

Civil Action No. 1:18-cv-02213-RMR-KLM

STACIE CULP, STEPHANIE PETERS,

    Plaintiffs,

v.

REMINGTON OF MONTROSE GOLF CLUB, LLC,

    Defendant.

---

## ORDER

This matter is before the Court on Plaintiffs' Motion for Entering Judgment in Favor of Ms. Culp, ECF No. 184 and Defendant's Brief Regarding Punitive Damages, ECF No. 181. Plaintiffs' Motion is fully briefed. For the following reasons, Plaintiffs' Motion, ECF No. 184, is **DENIED** and Defendant's request for the Court to enter judgment in its favor, ECF No. 181, is **GRANTED**.

### I.     BACKGROUND

Plaintiffs Stacie Culp ("Culp") and Stephanie Peters ("Peters") sued their former employer, Remington of Montrose Golf Club, LLC ("Remington"). Remington owns and operates a golf club, casual dining restaurant, and special events space in Montrose, Colorado, where the Plaintiffs were employed as servers. Plaintiffs allege that, during the course of their employment, they were subjected to sexual harassment by one of their supervisors, among others. Plaintiffs further alleged that when they tried to bring this

unlawful sexual harassment to Remington's attention, Remington failed to protect them and retaliated against Culp.

The case was tried to a jury over five days beginning on September 29, 2023. The claims tried were: hostile work environment sexual harassment under Title VII of the Civil Rights Act of 1964 and the Colorado Anti-Discrimination Act ("CADA"); negligent supervision and retention; and retaliation by Culp. The jury returned separate verdict forms for each Plaintiff which found no liability on the part of Remington as to any of the claims for either Plaintiff. *See* ECF Nos. 179, 180. However, the jury found that Culp was entitled to punitive damages in the amount of $125,000. ECF No. 180.

Plaintiff Culp asserted the verdict was inconsistent in finding no liability by Remington for any of her claims but awarding punitive damages on her behalf. Culp asks the Court to harmonize these inconsistencies and render judgment in her favor. Remington asserts the Court should ignore the answers to Question Nos. 5 and 6 regarding punitive damages as surplusage and enter judgment in favor of Remington as to all of Plaintiffs' claims.

A.   **The Verdict Forms**

Culp's verdict form contained nine questions. *Id.* Questions 1 and 2 were under the heading "Sexual Harassment – Hostile Work Environment." *Id.* Question 1 asked:

> Did Ms. Culp prove by a preponderance of the evidence that Remington subjected her to a hostile work environment based on her sex (sexual harassment) in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Colorado Anti-Discrimination Act ("CADA"), as described in Jury Instruction Nos. 22 through 29?

*Id.* Question 2 addressed damages for that claim. *Id.* If the jury answered "No" to Question 1, they were instructed not to answer Question 2. *Id.* The jury answered "No" to Question 1 and therefore left Question 2 blank. Questions 3 and 4 were under the heading "Retaliation." *Id.* Question 3 asked:

> Did Ms. Culp prove by a preponderance of the evidence that Remington retaliated against her for reporting alleged unlawful sexual harassment to Remington, with such retaliation violating Title VII and CADA, as described in Jury Instruction Nos. 30 through 34?

*Id.* Question 4 addressed damages for that claim. *Id.* The jury answered "No" to Question 3 as to liability and left the damages question blank. *Id.*

Questions 5 and 6 were under the heading "Punitive Damages." *Id.* After the heading and before the questions, there was an instruction to "[o]nly answer Question 5 if you answered "Yes" to either Question No. 1 or Question No. 3." *Id.* Question 5 asked:

> Did Ms. Culp prove by a preponderance of the evidence that Remington violated her rights, either by sexually harassing her or by retaliating against her, with malice or reckless indifference to her right to be free of such intentional discrimination, as described in Jury Instruction No. 38?

*Id.* Jury Instruction No. 38 was the instruction on punitive damages. Although the jury answered "No" to Questions 1 and 3, the jury answered "Yes" to Question 5. *Id.* The jury then answered Question 6, the damages question, by awarding Culp $125,000 in punitive damages. *Id.*

Questions 7 and 8 were under the heading "Negligent Supervision or Retention." *Id.* Question 7 addressed liability and Question 8 addressed damages. *Id.* Again, the jury answered "No" as to liability on Question 7 and left the damages question blank. *Id.* Question 9 asked for the total damages, not including punitive damages. *Id.* The jury was

instructed to only answer Question 9 if they answered "Yes" to Questions 1, 3, and/or 7.

*Id.* The jury left Question 9 blank. *Id.*

### B. Punitive Damages Jury Instruction

The jury instruction regarding punitive damages read:

INSTRUCTION NO. 38

**PUNITIVE DAMAGES**

If you find that the Defendant intentionally discriminated against the Plaintiff, the law allows, but does not require, an award of punitive damages. The purpose of an award of punitive damages is to punish a wrongdoer for misconduct, and also to provide a warning to others.

You may award punitive damages if you find that the Defendant engaged in discrimination with malice or with reckless indifference to the right of the Plaintiff to be free from such intentional discrimination. In order to find the Defendant liable for punitive damages, you must find that the Defendant discriminated in the face of a perceived risk that its actions would violate federal law.

In deciding the amount of punitive damages, you may consider the following:

1. The offensiveness of the conduct;

2. The amount needed, considering the Defendant's financial condition, to prevent the conduct from being repeated; and

3. Whether the amount of punitive damages bears a reasonable relationship to the actual damages awarded.

Where discriminatory acts on the part of the Defendant's managerial employees were contrary to the Defendant's good faith efforts to comply with the law by implementing and enforcing policies and programs designed to prevent unlawful discrimination, you shall not award punitive damages.

You may infer 'malice' or 'reckless indifference' on the part of the Defendant where a manager responsible for setting or enforcing policy in the area of discrimination did not respond to complaints, despite knowledge of serious harassment.

4

ECF No. 171 at 24.

### C. Discharge of Jury

After the jury returned its verdict, the Court began to dismiss the jury but was interrupted by Remington's counsel for a conference at the bench. *See* ECF No. 184-2. After both parties approached, Remington's counsel questioned the propriety of the jury's award of punitive damages. *Id.* Plaintiffs' counsel noted that there was some inconsistency in awarding punitive damages without finding liability. *Id.* The Court agreed and expressed its belief that something would need to be done after the jury has been dismissed. *Id.* The Court then dismissed the jury. *Id.* After the jury was dismissed, the Court instructed the parties to brief the issue regarding the apparent inconsistency in the Culp verdict. *Id.*

### D. Pending Motions/Briefs

As instructed, the parties filed their briefs and motions regarding the verdict issue. In Remington's Brief Regarding Punitive Damages, it argued that punitive damages could not be awarded because the jury found no liability as to Culp's hostile work environment sexual harassment and retaliation claims under Title VII and disregarded the instruction not to answer Question Nos. 5 and 6 under those circumstances. ECF No. 181. Remington contends that the Court should ignore the answers to Question Nos. 5 and 6 as surplusage and enter judgment in favor of Remington as to all of Plaintiffs' claims. *Id.* at 2.

In Plaintiffs' Motion for Entering Judgment in Favor of Ms. Culp, Plaintiffs argue that Remington waived any objection to the Culp verdict's inconsistency and that any

5

apparent inconsistency can be resolved in favor of Culp. ECF No. 184. Plaintiffs contend that to resolve the inconsistency, the Court should undertake an admittedly "confusing" analysis that includes finding that (1) the jury misinterpreted the verdict form and jury instructions and wrongly believed that punitive damages was a separate claim; (2) the jury wrongly believed it could only find for one claim and that it settled on the "claim" for punitive damages; (3) the jury did not answer the questions in order; and (4) the jury overlooked the instruction preceding Question 5 (the punitive damages question). *Id.* Based on this analysis, Plaintiffs ask the Court to either (1) apportion the damage award as $50,000 for punitive damages and $75,000 for negligent supervision or retention; (2) enter judgment in the amount of the verdict on punitive damages; or (3) order a new trial. *Id.* at 1.

Remington responds that it was not required to object to the Culp verdict because it is not the party alleging inconsistency. *See* ECF No. 188 at 4. Rather, Remington's position is that the verdict can be reconciled because the jury's decision to award punitive damages despite finding no Title VII liability is legally impossible. *Id.* at 2-3. Therefore, Remington maintains that the finding of no Title VII liability forecloses the award of punitive damages, and the award should be disregarded as legally superfluous. *Id.*

## II. ANALYSIS

### A. Waiver

The Court first rejects Plaintiffs' argument that Remington waived any objection to verdict inconsistency. Plaintiffs devote a substantial amount of their motion to this argument, and to the argument that the waiver rule applies to inconsistent special verdicts

6

despite Tenth Circuit law to the contrary. *See Heno v. Sprint/United Management Co.*, 208 F.3d 847, 851 (10th Cir. 2000) ("[W]hen the verdicts are special verdicts a party is not required to object to the inconsistency before the jury is discharged in order to preserve that issue for a subsequent motion before the district court.").

However, the Court need not decide whether Remington was required to object before the jury was discharged.[1] To the extent a party needed to object to preserve the right to argue inconsistency in the Culp verdict, Plaintiffs were that party. That is because the verdict found that the elements of the Title VII sexual harassment and retaliation claims were not met, but Plaintiffs now seek to impose Title VII liability based on the jury's award of punitive damages. Plaintiffs objected to the apparent inconsistency before the jury was discharged, and the Court now finds that the apparent inconsistency can be reconciled.

B.    The Apparent Inconsistency in the Culp Verdict

When presented with an apparent inconsistency in a verdict, "it is the duty of the courts to attempt to harmonize the answers, if it is possible under a fair reading of them . . . by exegesis if necessary . . . before [courts] are free to disregard the jury's special verdict and remand the case for a new trial." *Gallick v. Baltimore & O. R. Co.,* 372 U.S. 108, 119 (1963) (internal citations omitted); *see also United States Sec. & Exch. Comm'n v. Harkins*, No. 19-CV-02418-PAB-MDB, 2022 WL 3597453, at *3 (D. Colo. Aug. 23, 2022) ("When reviewing claims that a jury verdict is inconsistent, [the reviewing court]

---

[1] Even if Remington was required to object, the Court notes that Remington's counsel was first to raise the issue upon the reading of the verdict and before the jury was dismissed. *See* ECF No. 184-2. After Plaintiffs' counsel also raised the issue, the Court interrupted both parties and decided to resolve the issue post-trial. *Id.*

7

must accept any reasonable view of the case that makes the jury's answers consistent." (citing *Loughridge v. Chiles Power Supply Co.*, 431 F.3d 1268, 1275 (10th Cir. 2005)); *Domann v. Vigil*, 261 F.3d 980, 983 (10th Cir. 2001) ("In determining whether there is any inconsistency, we must accept any reasonable explanation that reconciles the jury's verdict.").

The parties agree that the verdict forms used in this case were special verdict forms. The general rule regarding a court's role in evaluating a jury's special verdict is "to try to reconcile the answers to the case to avoid retrial." *Harvey By & Through Harvey v. Gen. Motors Corp.*, 873 F.2d 1343, 1347 (10th Cir. 1989). The Tenth Circuit has quoted Wright and Miller's explanation of Rule 49(a) with approval:

> It is the duty of the court to attempt to harmonize the answers, if it is possible under a fair reading of them. Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. In determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted.

*Id.* (quoting Wright & Miller, *Federal Practice and Procedure*: *Civil* § 2510, at 515–17) (internal quotations and footnotes omitted). "Likewise, when submitting a general verdict and interrogatories under Rule 49(b), both the trial court and appellate courts have a duty to reconcile the two if any seeming conflict arises." *Id*. "Only when jury verdicts are logically incompatible is it error for the district court not to grant a new trial." *Id.* at 1347.

The Culp verdict initially appears inconsistent because the jury found no Title VII liability on the facts and evidence presented, but nevertheless attempted to award punitive damages. This outcome is legally impossible because the provision that allows

a Title VII plaintiff to recover punitive damages (42 U.S.C. §1981a) applies only if the plaintiff otherwise establishes the employer's liability under Title VII. *See* 42 U.S.C. §1981a; *Sessions v. New Mexico*, No. 20-CV-606 MV/KRS, 2022 WL 14812844, at *4 (D.N.M. Oct. 26, 2022) ("Section 1981a, however, does not create an additional, separate and independent cause of action for employment discrimination plaintiffs, but merely adds to the damages available to such plaintiffs under Title VII.").

The Seventh Circuit confronted a similar inconsistent verdict issue in *Freeman v. Chicago Park Dist.*, 189 F.3d 613 (7th Cir. 1999). In that case, the plaintiff brought Title VII racial discrimination claims against her employer after she was discharged. *Id.* at 615. The jury found that the employer had harassed the plaintiff, but that race was not a reason for the harassment or her discharge, and that the employer did not retaliate against her for her complaints of discrimination. *Id.* Nevertheless, the jury elected to award plaintiff punitive damages as a result of the employer's harassment, termination, and/or retaliation. *Id.* The district court set aside the jury's award of punitive damages and the Seventh Circuit affirmed that decision. *Id.* The Seventh Circuit reasoned:

> …[T]he jury's verdict is not inconsistent. The jury found that the plaintiff was harassed (apparently for reasons other than those protected by Title VII), and suffered damages, or a loss, in the amount of $45,000. However, the judge must enter judgment for the defendant, because the jury found that the harassment was not motivated by racial prejudice, and therefore, the plaintiff did not establish a Title VII violation.

*Id.* at 616.

The Court finds the Seventh Circuit's reasoning in *Freeman* persuasive. Here, the jury found that Remington had not committed Title VII sexual harassment or retaliation when it answered "No" to Questions 1 and 3. When answering Question 1, the jury was

asked to determine whether Culp "prove[d] by a preponderance of the evidence that Remington subjected her to a hostile work environment based on her sex (sexual harassment) in violation of [Title VII] and [CADA], as described in Jury Instruction Nos. 22 through 29[.]" Jury Instruction Nos. 22 through 29 instructed the jury as to the elements of the claim and the factual findings necessary to find liability. Thus, by answering "No" to Question 1, the jury necessarily found missing elements as to the Title VII sexual harassment claim.[2] *See CSX Transp., Inc. v. Hensley*, 556 U.S. 838, 841, 129 S. Ct. 2139, 2141, 173 L. Ed. 2d 1184 (2009) ("[J]uries are presumed to follow the court's instructions.").

Similarly, when answering Question 3, the jury was asked to determine whether Culp "prove[d] by a preponderance of the evidence that Remington retaliated against her for reporting alleged unlawful sexual harassment to Remington, with such retaliation violating Title VII and CADA, as described in Jury Instruction Nos. 30 through 34[.]" Jury Instructions No. 30 through 34 instructed the jury as to the elements of the claim and the factual findings necessary to find liability for Title VII retaliation. Again, by answering "No" to Question 3, the jury found there was at least one missing element.

---

[2] For example, Instruction No. 22 defines the elements of a sexual harassment claim under Title VII. Among those elements are that: "[t]he conduct complained of was sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment by creating an abusive working environment" and "[t]he Defendant knew or should have known about the conduct to which the Plaintiff claims she was subjected and failed to implement reasonably prompt and appropriate corrective action." ECF No. 171 at 23. Perhaps the jury found that any harassment was not "sufficiently severe or pervasive to alter the terms and conditions of the plaintiff's employment by creating an abusive work environment" or that there was harassment but Remington implemented "reasonably prompt and appropriate corrective action." Whatever the reason, the jury found that there were missing elements as to the Title VII claims when it answered "No" to Question 1.

Question 5—the punitive damages question—is different. When answering Question 5, the jury was asked whether Remington had violated Culp's rights by sexually harassing her or retaliating against her with malice or reckless indifference. ECF No. 180. The jury was not directed to the elements or definitions of Title VII sexual harassment and Title VII retaliation as they had been when answering questions as to liability on those claims. Thus, like in *Freeman*, the apparent inconsistency in the Culp verdict form can be reconciled because, when it answered Question 5, the jury found that Culp was sexually harassed and retaliated against, but "apparently for reasons other than those protected by Title VII." *See Freeman*, 189 F.3d at 616. For the foregoing reasons, the Court finds that the answers can be harmonized and therefore the verdict is not inconsistent[3]. Accordingly, the Court must enter judgment in Remington's favor.

C.  **Surplusage**

Although the Court is satisfied that the verdict can be reconciled for the reasons discussed above, there is another reason that the Culp verdict can be reconciled in this case – the jury disregarded a clear instruction that they should only answer question 5 if they answered "Yes" to Questions No. 1 or 3.

---

[3] In reaching this conclusion, the Court acknowledges and rejects Plaintiffs' attempt to harmonize the jury's answers in Culp's favor. Plaintiffs contend that the jury may have been confused by Jury Instruction No. 44, which stated: "If you find for the plaintiff on more than one claim for relief, you may award her damages only once for the same damages." ECF No. 184 at 13-14. Plaintiffs argue that this jury instruction confused the jury into thinking that punitive damages was a separate "claim" and therefore the jury thought they could only award damages for one of the claims. *Id.* at 13-18. But even if the jury mistakenly believed punitive damages was a separate claim and therefore chose only to award <u>damages</u> for the punitive damages "claim" as opposed to the hostile environment and retaliation claims, that does not explain why the jury would have answered "no" as to <u>liability</u> for the hostile environment and retaliation claims. To harmonize the instructions in their favor, Plaintiffs ask the Court to engage in an admittedly "confusing" and unreasonable analysis that does not include a fair reading of the answers. The Court declines to do so and instead reconciles the apparent inconsistency as described above.

As previously stated, "in determining whether there is inconsistency in the jury's findings, the findings are to be construed in the light of the surrounding circumstances and in connection with the pleadings, instructions, and issues submitted." *Harvey By & Through Harvey v. Gen. Motors Corp.*, 873 F.2d at 1347 (quoting Wright & Miller, *Federal Practice and Procedure: Civil* § 2510, at 515–17) (internal quotations and footnotes omitted). Here, in light of the circumstances, the jury's verdict reveals that the jury disregarded the clear instruction not to answer Question 5.

Although the Tenth Circuit has not squarely addressed the issue of "surplusage" in a verdict, the Court finds the Ninth Circuits' view on this issue persuasive. In the Ninth Circuit, "[s]uperfluous answers, proffered in violation of trial court's instructions, are not part of special verdict and must be disregarded as surplusage." *Floyd v. L.*, 929 F.2d 1390, 1397 (9th Cir. 1991). The Tenth Circuit, albeit in an unpublished opinion, cited *Floyd* with approval for this very proposition. *See Romero v. Helmerich & Payne Int'l Drilling Co.*, 768 F. App'x 838, 845 (10th Cir. 2019) ("Some failures to follow the jury instructions differ from logically contradictory verdicts . . . . Failing to follow the court's instructions may create only superfluous information, not a logical contradiction." (quotations omitted)).

The First and Fifth Circuits have also taken this approach. *See White v. Grinfas*, 809 F.2d 1157, 1161 (5th Cir. 1987) ("[I]f . . .the jury's answer to a question that was supposed to terminate further inquiry is clear and disposes of the legal issues, on review we must ignore the jury's necessarily conflicting answers to any other questions."); *Kavanaugh v. Greenlee Tool Co.*, 944 F.2d 7, 9 (1st Cir. 1991) (upholding district court

decision to disregard "inconsistent" answers on verdict form where "[a]ll of the alleged inconsistencies in the special verdicts stem[med] from the jury's failure to comply with the written instructions on the special verdict form and with the companion explanations given in the charge to the jury"); *Carr v. Wal-Mart Stores, Inc.*, 312 F.3d 667, 674 (5th Cir. 2002) ("[A] district court does not abuse its discretion in reconciling verdicts containing answers to interrogatories that the jury was instructed not to answer, when it [ ] disregards the superfluous answers in their entirety....(citations omitted)). Recently, another division of this court applied these same principles. *See Curtis Park Grp., LLC v. Allied World Specialty Ins. Co.,* No. 20-CV-00552-CNS-NRN, 2023 WL 5625450, at *12 (D. Colo. Aug. 31, 2023). In *Curtis Park*, the court found the jury's apparently inconsistent answer to be surplusage and therefore concluded that "the jury's answers do not reveal a logical incompatibility that warrants a new trial." *Id.*

Here, there is no dispute that the jury was instructed only to answer Question 5 if it answered "Yes" to either Question 1 or Question 3. The jury answered "No" to both of those questions and therefore should not have answered Questions 5 and 6. The Court finds that the answers to Question 5 and 6 were superfluous and proffered in violation of the Court's clear instruction. Accordingly, the Court disregards the answers to Question 5 and 6 as surplusage and finds that it must enter judgment in Remington's favor.

### III.  CONCLUSION

For the reasons stated herein, it is

ORDERED Plaintiffs' Motion for Entering Judgment in Favor of Ms. Culp, ECF No. 184, is DENIED; it is

FURTHER ORDERED that judgment shall enter in favor of Remington on all claims; it is

FURTHER ORDERED that the jury's award of punitive damages is set aside.

DATED: December 20, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge