IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:18-cv-02213-RMR-KAS

STACIE CULP

Plaintiff,

v.

REMINGTON OF MONTROSE GOLF CLUB, LLC

Defendant.

**MOTION FOR ATTORNEY FEES AND EXPENSES**

Plaintiff Stacie Culp, now known as Stacie Trujillo, by and through her attorneys of record, Killian, Davis & Richter, PC, hereby submit this Motion for Attorney Fees and Expenses, and in support thereof states as follows:

**CERTIFICATION OF CONFERRAL**

Undersigned counsel has conferred with counsel for the defendants. Counsel for the defendant objects to the relief requested.

**I.  Background**

Plaintiff, Stacie Culp, along with former co-plaintiff Stephanie Peters, initiated this Title VII suit in 2018. Each plaintiff brought claims for sexual harassment and retaliation under Title VII and Colorado's analogue (CADA), along with a tort claim for negligent supervision and retention.

At trial, Defendant Remington prevailed over Plaintiff Peters. However, the jury

reached inconsistent verdicts as to Plaintiff Culp.  The Court resolved the conflict in Defendant's favor and entered judgment for Remington and against Culp.  Both Plaintiffs appealed.  The Tenth Circuit affirmed the judgment against Peters.  But, in a published opinion, the Tenth Circuit reversed the judgment against Culp and remanded the case for a new trial on the Title VII and CADA claims.

On remand, the parties stipulated to a judgment against Remington and in favor of Culp in the amount of $50,000.  As Culp did not pursue a claim for economic damages, this was the maximum damage judgment she could obtain.  Based on the stipulation, the Court entered judgment on Culp's behalf.

## II. Request for Attorney Fees

### A. Legal Authority

Both Title VII and CADA provide for an award of attorney fees to a prevailing plaintiff.  42 U.S.C. §2000e-5(k); section 24-34-405(5), C.R.S.  42 U.S.C. §2000e-5(k) also allows for an award of costs, "including expert fees."  A prevailing plaintiff in a civil rights action such as this, "should ordinarily recover an attorneys' fee unless special circumstances would render such an award unjust." *Gudenkauf v. Stauffer Communs.*, 158 F.3d 1074, 1082 (10th Cir. 1998), *quoting Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-17 (1978).  "[T]here are two elements in deciding whether to award attorney's fees": first, is determining whether party seeking fees is a "prevailing party," and second, is determining the reasonable fee. *Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997).  "A plaintiff 'who succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit' is a

2

'prevailing party.'" *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

The starting place for a fee award is the number of hours reasonably spent on the case multiplied by the reasonable hourly rate. *Hensley*, 461 U.S. at 433; *Case*, 157 F.3d at 1249. The party seeking fees should make a good faith effort to use billing judgment and exclude fees that are excessive, redundant, or unnecessary. *Hensley*, 461 U.S. at 434. The billing should identify "the general subject matter of counsels' time expenditures." *Sussman v. Patterson*, 108 F.3d 1206, 1209 (10th Cir. 1997).

In determining the reasonable time spent either for a task or the whole litigation, the court should consider the "complexity of the case, the number of reasonable strategies pursued, and the responses necessitated by the maneuvering of the other side." *Case*, 157 F.3d at 1250. If the opposing party has an aggressive litigation strategy, that will warrant spending more time on the case. *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1260 (10th Cir. 2005). Because most of the evidence rests with defendants, and plaintiffs have the burden of proof, plaintiffs' counsel will usually spend more time on the case than defense counsel. *Sussman*, 108 F.3d at 1209.

In determining the reasonable hourly rate, the court should "determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Case*, 157 F.3d at 1256. "Hourly rates must reflect the 'prevailing market rate in the relevant community.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1510 (10th Cir. 1995). The hour rate should reflect rates in effect at the time the fee is awarded by the court, rather than the time when services were performed. *Ramos*

*v. Lamm*, 713 F.2d 546, 555 (10th Cir. 1983).  Where the work of paralegals is typically billed separately, a fee award may include fees for the work of paralegals. *Id.* at 1249.

The attorney fees a plaintiff may recover include fees for prevailing on appeal. *Gurule v. Wilson*, 635 F.2d at 782, 792 (10th Cir. 1980).  The prevailing plaintiff may also obtain the fees incurred in seeking the award of fees. *Id.*; *Case*, 157 F.3d at 1254.

When a plaintiff has brought multiple claims for relief, they may involve a common core of facts or be based on related legal theories. *Hensley*, 461 U.S. at 435. In these situations, much of counsel's time will be dedicated to the litigation as a whole. *Id.*  In this situation the court should look at the "significance of the overall relief obtained…." *Id.*  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.*  "Normally this will encompass all hours expended on the litigation…." *Id.*  In these cases, "the award should not be reduced simply because the plaintiff failed to prevail on every contention in the lawsuit." *Id.*

In considering the degree of success, the court first considers the difference between the amount of damages sought and the damages recovered. *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1230 (10th Cir. 2001).  Second, the court considers the extent to which plaintiff succeeded on their theory of liability. *Id.* at 1230-31. Third, the court considers whether plaintiff has accomplished a public goal. *Id.* at 1231.  In the Tenth Circuit this broadly includes a victory that "encourages attorneys to represent civil rights litigants, affirms an important right, puts the defendant on notice that it needs to improve, and/or provokes a change in the defendant's conduct." *Id.* at 1232.

While the Court may consider the difference between the damages sought and

the damages recovered, it is **not** to consider the difference between the damages recovered and the amount of fees awarded. *Ramos v. Lamm*, 713 F.2d 546, 557 (10th Cir. 1983). The amount recovered is less important than the rights being vindicated. *Id.*

### B. Culp is Entitled to An Award of Attorney Fees

Culp is the prevailing party and achieved excellent results. Consequently, she is entitled to a nearly full attorney fee award. First, Culp is the prevailing party because she has obtained a $50,000 judgment in her favor on her Title VII and CADA claims. Therefore, she has succeeded on a significant issue in the litigation and achieved the benefit the parties sought in bringing suit.

Additionally, Culp has obtained excellent results. Culp's three claims - harassment, retaliation, and negligent hiring and retention - were based on a common core of facts. Thus, it is not appropriate to reduce her fees simply because she did not prevail on all of them. For example, where a plaintiff raised several grounds for invalidating abortion restrictions, the claims were based on a common core of facts as they all sought the same result. *Jane L*, 61 F.3d at 1512. Here, Culp's claims all sought recovery for Culp's gender-based mistreatment at Remington, largely at the hands of Jason DeSalvo. Likewise, Culp's claims were based on the same common core of facts as Peters'. Like Culp, Peters suffered gender-based mistreatment at Remington, largely at the hands of DeSalvo. She also witnessed some of DeSalvo's mistreatment of Culp. Thus, Peters would have been a witness even if she was not a party to the suit. Therefore, the Court should consider the overall result, not the specific claims.

The three *Barber* factors show excellent results. First, although Culp sought

5

more money on her tort claim, she recovered the most she could on her Title VII and CADA claims, due to the damage cap. 42 U.S.C. §1981a(3)(A); section 24-34-405(3)(d)(1), C.R.S.  Further, $50,000 is more than a nominal recovery.

Further, even obtaining a monetary judgment in a civil rights case is significant success, as the twenty-year average success rate in trial as of 2022 was 25.17% for civil rights plaintiffs. Michael E. Hegarty, <u>2022: The Year in Review U.S. District Court District of Colorado</u> (Aug. 30, 2023) p.36.  Nationally, the win rate for Title VII plaintiffs from 1998 to 2006 was 10.88%. Kevin M. Clermont and Stewart J. Schwab, <u>Employment Discrimination Plaintiffs in Federal Court: From Bad to Worse</u>, 3 Harvard L. & Pol. Rev. 103, 117, 127 (2009).  Culp obtaining a $50,000 judgment is significant.

Second, Culp prevailed upon her legal theories.  The Tenth Circuit remanded the case for a trial on Culp's Title VII claims for harassment and retaliation.  She then obtained a $50,000 judgment on these claims, thereby vindicating them.  Also, the initial jury verdict, though inconsistent, indicates the jury believed Remington had engaged in wrongdoing.  Culp also prevailed on her primary appellate legal theory that the jury verdict was inconsistent and that a new trial was required.  This too was a significant success.  In the Tenth Circuit, the overall reversal rate in 2024 was 5.3%. <u>Practitioner's Guide to the United States Court of Appeals for the Tenth Circuit</u> (13th Ed. Jan. 2025).  Thus, Culp prevailing on her appeal further indicates she obtained an excellent result.

Third, Culp accomplished a public goal.  In attempting to explain the inconsistent verdicts, and the jury's award of punitive damages, Remington – through counsel – acknowledged the jury was sending a message that Remington's behavior was

6

unacceptable and needed to change. Culp's judgment further demonstrates that sexual harassment is unacceptable even in male dominated environments like bars and golf courses. And Culp's appellate victory resulted in a published opinion setting forth a new legal standard of assessing jury verdicts in the Tenth Circuit. Thus, Culp had excellent results in achieving public goals and in the litigation overall.

### C. Specific Request for Fee

Due to the age of this case, several attorneys have worked on it. Some of those attorneys are no longer with plaintiff's counsel's law firm. Culp will provide the best information available on their qualifications. For attorneys, Culp is requesting hourly rates varying from $400 per hour to $250 per hour. For paralegals, Culp is requesting $100 per hour. These rates are commensurate with those approved of for plaintiff's counsel's firm in *Barnett v. Board of Cty. Comm'rs*, 14-cv01765, 2015 U.S.Dist.LEXIS 173770, *10-11, *13-15 (D. Colo. Dec. 14, 2015). The hourly rates are reasonable and reflect rates charged in Colorado generally for civil rights litigations, and the Grand Junction area for attorneys generally. **Exhibit 1**, Affidavit of Damon Davis.

#### 1. Hourly Rates

<u>Keith Killian</u>

Culp is requesting an hourly rate of $400 for Mr. Killian. Mr. Killian acted as lead counsel for the trial and post-trial matters. After serving as a JAG officer in the Air Force and a public defender, Mr. Killian founded Killian Davis in 1991. **Exhibit 2**, Killian Bio. Since that time, Mr. Killian has represented plaintiffs in tort, employment, and civil rights litigation. *Id.* Mr. Killian was recognized as a "Super Lawyer" by Denver Super

7

Lawyer magazine. *Id.* He is a former president of the Colorado Trial Lawyers Association. *Id.* Mr. Killian has handled numerous trial and appeals, generating several published opinions, including on employment discrimination, such as *Community Hosp. v. Fail, Hall v. Claussen, and Black v. Waterman*. Given Mr. Killian's skill and experience, a rate of $400 per hour is reasonable.

### Damon Davis

Culp seeks an hourly rate of $375 for Mr. Davis. Mr. Davis advised on legal matters and motions practice and handled the appeal. Mr. Davis has been in practice since 2002, the entire time with Killian Davis. **Exhibit 1**. Mr. Davis has handled numerous appeals, resulting in several published opinion, including a prior employment discrimination case, *Foster v. Mountain Coal Co., LLC.* **Exhibit 3**, Davis Bio. Mr. Davis is a former president of the Mesa County Bar Association. **Exhibit 1**. Given Mr. Davis' skill and experience, a rate of $375 per hour is reasonable.

### Nicholas Mayle

Culp seeks an hourly rate of $375 for Mr. Mayle. Mr. Mayle was approved for a rate of $400 per hour in the *Barnett* case. Mr. Mayle is a former shareholder in Killian Davis and was lead counsel on this case prior to his departure. Mr. Mayle is now at another law firm, but his affidavit from the *Barnett* case is available. **Exhibit 4**, Mayle Affidavit. Mr. Mayle has been practicing since 2006. *Id.* He has represented plaintiffs throughout that time, including on employment matters. *Id.* Mr. Mayle successfully litigated the *Barnett* case, a pregnancy discrimination case, prior to working on this case. *Id.* Given his skill and experience, a rate of $375 per hour is reasonable.

8

### Joseph Azbell

Culp seeks an hourly rate of $250 for Mr. Azbell.  Mr. Azbell was approved for an hourly rate of $300 in the *Barnett* matter.  Mr. Azbell is now at another law firm, but his affidavit from the *Barnett* case is available. **Exhibit 5**.  Mr. Azbell began practicing law in 2008 as an assistant U.S. attorney. *Id.*  In that capacity, he defended the U.S. in employment discrimination cases. *Id.*  He switched to private practice in 2012, with an emphasis on representing plaintiffs in employment, wage and hour, and tort suits. *Id.*  Given his skill and experience, a rate of $250 per hour is reasonable.

### Joseph Fredenburg

Culp seeks an hourly rate of $250 for Mr. Fredenburg.  Mr. Fredenburg is now at another law firm.  Mr. Fredenburg was admitted to practice law in 2020. **Exhibit 6**, attorney regulation license status.  Mr. Fredenburg began working for Killian Davis almost straight out of law school. **Exhibit 1**.  During that time Mr. Fredenburg represented plaintiff in a variety of contexts, and by 2023 had his own case load where he acted as lead counsel, and settled cases worth about $1 million in fees in 2024. **Exhibit 1**.  Given his skill and experience, a $250 hourly rate is reasonable.

### Benjamin Meade

Culp is seeking an hourly rate of $250 for Mr. Meade.  Mr. Meade is no longer with Killian Davis.  Mr. Meade was admitted to practice law in 2008. **Exhibit 8,** Meade Bio.  Mr. Meade clerked at the Colorado Court of Appeals and Colorado Supreme Court for several years. **Exhibit 9**, Meade Linkedin Bio.  Mr. Meade's worked emphasized legal research and motions practice, which was his primary role in this case. *Id.*  Given

9

his skill and experience, a $250 hourly rate is reasonable.

### Suzy Keith

Culp seeks an hourly rate of $250 for Ms. Keith.  Ms. Keith is now at another law firm.  Ms. Keith was admitted to practice law in 2003. **Exhibit 10**, Keith Linkedin Bio.  Ms. Keith had experience as an attorney, in non-profit and government work, and in law firm administration. *Id.*  Ms. Keith continues as an attorney at her new firm. *Id.*  Ms. Keith second chaired Mr. Killian on this case until her departure.  Given her skill and experience, a $250 hourly rate is reasonable.

### Paralegals

Culp seeks a uniform hourly rate of $100 for paralegal work.  An hourly rate of $75 was approved for Killian Davis in the *Barnett* case.  In the ten years since that case was decided, hourly rates have increased.  An hourly rate of $100 for paralegal work is reasonable, and is probably low for the Grand Junction area. **Exhibit 1**.  Paralegals increase efficiency by doing work attorneys would otherwise have to do, but at a lower rate.  Thus, Culp requests a rate of $100 per hour for all paralegal work on the case.

### 2. Total Fees Requested

Each attorney and paralegal at Killian Davis is expected to keep track of their time contemporaneously each day. **Exhibit 1**.  Time may be kept directly on the computer, or on paper and then entered into the computer. *Id.*  The accounting system then assigns the time to the case by the case's internal case number.  The firm relies on accurate entries not only for attorney fee motions, but to track the profitability of cases and case classes and to track the productivity of attorneys, including for bonuses. *Id.*

10

The raw fee totals for all work by plaintiff's counsel on this case at the above hourly rates is $397,093.00. **Exhibit 11**, Fee Summary. This is shown on three exhibits. **Exhibit 12** is a printout of work performed on Culp's (Trujillo's) specific case and internal case number. **Exhibit 13** is a printout of the work performed on the "master case" for both Culp and Peters. **Exhibit 14** is the time Mr. Davis spent on the oral argument before the 10th Circuit, which was inadvertently entered separately.

Mr. Davis then reviewed each entry, and exercising billing judgment eliminated entries totaling $29,967.50. **Exhibit 1**. Entries were excised for duplicative work and excessive time on tasks. **Exhibit 1**. Entries were also excised if they related specifically to Plaintiff Peters, to the unsuccessful tort claim, or to economic damages, which Culp ultimately did not seek. **Exhibit 1**. The reductions are shown in Exhibits 12, 13, and 14, with ~~strikethroughs~~ with the reduction shown in the right margin. The total for reductions is shown on **Exhibit 11**. After these reductions, there are $367,125.50 in attorney fees.

In addition to these reductions, Culp proposes a further reduction of 10% to account for the less than complete success of the case. Culp also proposes a further 5% reductions, as some of the entries are for block billing or are overly vague. This results in an overall 15% reduction. With this reduction, Culp seeks a total attorney fee award of $312,056.67.

### III.     Request for Expenses

"Reasonable expenses incurred in representing a client in a civil rights case should be included in the attorneys' fee award if such expenses are usually billed in addition to the attorney's hourly rate. *Case*, 157 F.3d at 1257. Such expenses are

11

awardable if 1) not absorbed as part of overhead by usually billed to the client, and 2) they are reasonable. *Jane L.*, 61 F.3d at 1517.

### A. Postage and Delivery Charges

"Federal Express deliveries [and] postage charges" are normally billed to the client and are awardable as expenses. *Praseuth*, 406 F.3d at 1259-60.  Killian Davis bills clients for postage and delivery. **Exhibit 14**, Wangelin Affidavit.  Culp seeks $33.72 in postage charges, $16.96 for regular letters and 16.76 for packages. **Exhibit 15,** Cost Summary.  Culp seeks $607.12 for Federal Express charges. *Id.*  The detailed entries for these items are included in **Exhibit 16**, the Expense Activity Report, p.8, 17, 24.  Delivery charges are incurred in requesting records by mail, sending items to the clients, and delivering items to experts or other witnesses. **Exhibit 1**.  Given the duration of the case and number of witnesses and exhibits, these charges are reasonable.  Culp requests a total of $640.84 for delivery charges.

### B. Electronic Legal Research

Electronic research charges, like those for Westlaw, are usually billed to the client separate from the attorney's hourly rate, so should be awarded as expenses if reasonable. *Case*, 157 F.3d at 1258.  The "prevailing view among federal courts is that computer research charges are recoverable…." *Okla. Nat. Gas Co. v. Apache Corp.*, 355 F.Supp.2d 1246, 1260 (N.D. Okla. 2004).  Computerized legal research is necessary in Grand Junction as there is no law library. **Exhibit 1**.  Plaintiff's counsel uses Lexis for legal research. **Exhibit 14**.  Lexis charges the firm a flat fee, which is apportioned to client's based on the use of the service for their case. *Id.*  The clients are

billed for research charges separate from attorney fees. *Id.* The charges are shown in **Exhibit 16**, p.19-21. Counsel also did some research on PACER which is reflected here. *Id.* Culp is requesting $2,763.67 in computer research expenses. **Exhibit 15**.

### C.   Investigation Expenses

"[F]ees paid to investigative services" may be awarded as expenses. *Praseuth*, 406 F.3d at 1259. Plaintiff's counsel uses a service from LexisNexis called "Accurint" to research parties and witnesses. **Exhibit 14**. The service allows counsel to learn information about parties and witness that may be useful to the case. It also allows counsel to find parties and witnesses in order to contact them or serve them with process or subpoenas. The charges are shown on **Exhibit 16**, p.22-23. Counsel requests Accurint charges through October 31, 2023, to reflect charges incurred through the trial date. These charges amount to: $2,050.58.

### D.   Trial Transcripts

Culp has requested the deposition transcripts actually used in trial as part of her bill of costs. Here, she seeks the trial transcripts she used in this case. Culp ordered partial transcripts in order to address the inconsistent verdict. These are reflected on **Exhibit 16**, p.25, as the first two entries for Therese Lindblom, and total $594.80. These costs were necessary to the proceedings and are passed on to the client, so should be awarded. Culp then ordered the remaining transcripts for the appeal. The charge for this was $3,200.00. **Exhibit 17**, email invoice of Lindblom. Culp needed the entire transcript to ensure all issues were preserved and presented, and for preparation of the statement of the case. As the appellant prepares an appendix which serves as

13

the record, Culp needed to order the whole transcript. As Culp can recover attorney fees for work on the successful appeal, she should also recover expenses associated with the appeal. Thus, she requests $3,794.80 for trial transcripts.

### E. Process Server Costs

In addition to the initial service of process, which was sought in the bill of costs, Culp incurred charges for service of subpoenas on witness, a number of whom were reluctant to testify. In particular, Janelle Del Tondo avoided service of a subpoena, causing Culp to incur costs trying to serve her. Service costs are shown on **Exhibit 16**, p.26. Excluding the initial service of process, Culp seeks $810 for service expenses.

### F. Other Copy Costs

Culp incurred outside copy charges of $507.87 to prepare the appendix for appeal, including copying and binding. **Exhibit 16**, p.28 (penultimate entry). This cost is billed to the client. Just as Culp can obtain attorney fees for the successful appeal, she should recover this copy charge of $507.87 as well.

### G. Travel Costs

"Some expenses, such as travel, may be included in the concept of attorney's fees" and incidental expenses of litigation. *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000). For example, in prison litigation, the cost of visiting the prison in another city was awardable. *Ramos*, 713 F.2d at 559. Plaintiff's counsel are located in Grand Junction, near to where Plaintiffs were located. They incurred travel expenses to attend: in person conference with the Court, the trial, and oral argument at the subsequent appeal. **Exhibit 16**, p.29-31. Due to the distance from Grand Junction to

14

Denver, and the timing of the hearings, overnight accommodations were often needed. Counsel also needed meals which they would normally make and eat at home, or bring to work. The major expense was for the hotels during the trial. **Exhibit 18**, hotel invoices. Counsel were able to get credit for hotels reserved for the first trial. **Exhibit 16**, p.30. Culp is also reducing this request by $2,216.95 to account for Peters' hotel room. **Exhibit 18**, p.3. Thus, Culp requests $12,430.02 in travel expenses.

### H.    Expert Witness Fees

Expert witness fees are specifically permitted by 42 U.S.C. §2000e-5(k). Typically, expert fees may be reimbursed as part of the attorney fees. *Ramos*, 713 F.2d at 559. Culp has one expert, who testified at trial, Dr. Steve Albrecht. Dr. Albrecht's invoices are attached as **Exhibit 19.** The invoices show his total fee, including his travel costs for trial, was $5,286.39. Culp requests this amount, which is reasonable.

### I.    Jury Consultant and Focus Group Expenses

Culp employed a jury consultant to assist with trial preparation and strategy. In difficult cases, where many witnesses contradict plaintiff's theory, using a jury consultant constitutes "reasonable out-of-pocket expenses" normally charged to the client, making them an awardable expense. *Gilster v. Primebank*, 884 F.Supp.2d 811, 881 (N.D. Iowa 2012). If counsel performed jury research or conducted mock trial themselves, it would be an awardable expense, so contracting for said services is likewise an awardable expense. *BD v. DeBuono*, 177 F.Supp.2d 201, 204 (S.D. N.Y. 2001). Title VII cases are notoriously difficult to win and, as in *Gilster*, many defense witnesses contradicted Culp's theory, making a jury consultant appropriate.

15

Culp conducted two mock trials, one before the first scheduled trial, and another before the second scheduled trial.[1]  Culp is not seeking the cost of the first mock trial. The second mock trial was conducted by Trial Structure at a cost of $16,674.83.  **Exhibit 20**.  Culp requests this amount in mock trial expenses.

### J. Expense Conclusion

Culp requests the above expenses.  The total expenses requested are $44,959.00.  Culp requests an award in this amount.

### Conclusion

As the prevailing party, Culp is entitled to an award of fees and costs.  She request that the Court award her $312,056.67 in fees and $44,959.00 in expenses.

DATED this 13th day of November, 2025

/s/*Damon Davis*
Damon Davis, Esq.
Killian, Davis & Richter, PC
202 North Seventh Street
Grand Junction, CO 81501
Telephone: (970) 241-0707
FAX: (970) 242-8375
E-mail: damon@killianlaw.com
Attorney for Plaintiffs
Stacie Culp (Trujillo)

---

[1] The mock trial expenses are included in the expert fees on **Exhibit 15**.

16

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on13th day of November 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following e-mail addresses:

| | |
|---|---|
| Andrew H. Teske, Esq. | ***CM/ECF** |
| Nicholas H. Gower, Esq. | ***CM/ECF** |
| Karoline M. Henning, Esq. | ***CM/ECF** |
| Hoskin Farina & Kampf, PC | |
| 200 Grand Avenue, Suite 400 | |
| Grand Junction, CO 81501 | |
| *Counsel for Defendant* | |

/s/*Damon Davis*
Damon Davis, Esq.
Killian, Davis & Richter, PC
202 North Seventh Street
Grand Junction, CO 81501
Telephone: (970) 241-0707
FAX: (970) 242-8375
E-mail: damon@killianlaw.com
Attorney for Plaintiffs
Stacie Culp (Trujillo)